# EXHIBIT G

Declaration of Warden Jerry Howell, SDCC

# EXHIBIT G

AARON D. FORD
   Nevada Attorney General
D. RANDALL GILMER (Bar No. 14001)
   Chief Deputy Attorney General
State of Nevada
Office of the Attorney General
555 East Washington Avenue, Suite 3900
Las Vegas, NV 89101
(702) 486-3427 (phone)
(702) 486-3773 (fax)
drgilmer@ag.nv.gov
*Specially Appearing as*
*Attorneys for Warden Howell*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARCELL WILLIAMS,<br><br>    Plaintiff,<br><br>vs.<br><br>WARDEN OF SOUTHERN DESERT CORRECTIONAL CENTER, et al.,<br><br>    Defendants. | CASE NO. 2:20-cv-00639-RFB-BNW<br><br>**DECLARATION OF SOUTHERN DESERT CORRECTIONAL CENTER WARDEN, JERRY HOWELL** |

I, Jerry Howell, hereby declare based on personal knowledge and/or information and belief, that the following assertions are true.

    1.    I am currently employed as the Nevada Department of Corrections (NDOC), where I am assigned as Warden of the Southern Desert Correctional Center (SDCC). As warden, I am responsible for overseeing all aspects of SDCC. These duties include taking steps to ensure that all NDOC policies, practices and procedures are implemented and followed by all SDCC staff, and to the extent applicable, outside vendors as well as inmates housed at SDCC.

    2.    As warden I am responsible for the health and welfare of all individuals who enter SDCC, whether they do so for work reasons or as an inmate who has been assigned to SDCC. The best way to maintain health and welfare is to prevent as much as possible infectious diseases from being introduced to SDCC.

    3.    The COVID-19 pandemic has made this responsibility even more pronounced. As warden, I have instructed my staff to comply with all protective protocols recommended

for enactment by the Nevada Department of Corrections Medical Director, Dr. Michael Minev. Director Daniels and Deputy Director Wickham hold me accountable to ensure that these safety standards are not only implemented, but followed.

4. In that regard, on March 19, 2020 I authored a memorandum regarding COVID-19 that I instructed be posted in all housing units and other conspicuous places throughout SDCC. In addition to posting the March 19, 2020 memorandum, I directed the information to be shown on the inmate closed circuit television channel on a constant loop.

5. A copy of the March 19, 2020 memorandum has been provided to Chief Deputy D. Randall Gilmer to include as an exhibit to this filing. It is my understanding from speaking to Mr. Gilmer that the memorandum will be made part of the filing as **Exhibit K**. I have reviewed the memorandum and attest that it is a true and accurate copy of the memorandum I directed be posted. I have also provided photographs to Mr. Gilmer. These photographs were taken of the posted March 19, 2020 memorandum as it is posted in Mr. Williams housing unit. It is my understanding that these photographs, which I provided to counsel, will be attached as **Exhibit L** to the filing that this Declaration will also be part of.

6. Previous to COVID 19, we issue cleaning supplies weekly to inmates upon request. Since the outbreak, we have increased cleaning supplies in the units and have authorized staff to issue upon request as needed. The Unit Officers are aware that should they run low on cleaning supplies to simply ask our cleaning/chemical supply Officer for more. We have also doubled the amount of hand and body soap they were previously getting, and have authorized staff to issue upon request should the inmates run out. In order to ensure this directive, I directed Lt. Dean Willett to email all staff on April 3, 2020. The email, which I have provided to counsel and have been informed will be attached as **Exhibit O** to the filing with this Court, explicitly directed staff that "when issuing weekly supplies, [they are] to double up the amount of soap given to inmates," and that should an inmate ask for additional soap, it is to be "give[n] to them."

7. I have required mandatory compliance with Dr. Minev's sanitization suggestions, which I understand come from guidance from the Center for Disease Control. In this regard, I am requiring all housing units and entry doors to be cleaned at a minimum once every two hours. The dining rooms and gym are cleaned after every use. And finally, the maintenance areas are mandated to be cleaned at least once every hour. These cleaning time requirements are merely minimums which are often exceeded.

8. The directives referenced in ¶¶ 6–7 above are over and above the general requirements of Operational Procedure (OP) 490, effective July 3, 2015. I provided a true and accurate copy of OP 490 to counsel, which I understand will provide it to the Court as part of this filing as **Exhibit P**. OP 490 makes clear that "[i]t is the responsibility of all staff directly involved in supervising a shop, housing unit or any other area . . . to maintain constant surveillance of that area to ensure acceptable sanitization practices are followed on a daily basis." OP 490 at 2, § 490.02(1). Staff are also empowered to provide "appropriate protective clothing . . . should reasonable precautions dictate the use of such clothing." *Id.* at 2, § 490.02(2). And finally, inmates are expected and required to assist in these cleaning efforts by "maintain[ing] sanitary conditions, personal hygiene, and cleanliness," which includes using the "cleaning equipment or material issued to them." *Id.* at 2, ¶ 490.03(1). Inmates are also reminded of the requirement to "[r]eport all illness or disease" that may "require treatment." *Id.*

9. I again reiterated that the mandatory time frames for ensuring sanitization referenced ¶ 7, as well as the supplies provided to inmates referenced in ¶¶ 6, 8 are minimum requirement, and that these requirements are often exceeded to ensure a sanitized and safe environment are maintained throughout SDCC.

10. I can also attest to the precautions taken regarding all inmates that are transferred to SDCC from other institutions. These precautions are also followed when an inmate who is housed at SDCC has to be transported outside of SDCC for an essential purpose that cannot be rescheduled. In this regard, I affirm that all inmates arriving at SDCC are placed in housing Unit 7, which has been designated as SDCC's isolation or

quarantine unit. The general rule is that these inmates remain in Unit 7 for at least fourteen (14) days. In the event that any of these inmates begin to exhibit COVID-19 related symptoms, they shall be moved from Unit 7 to an isolated area within the medical building for observation, and shall remain isolated from the general prison population, employees and other persons as is reasonably possible, with medical treatment provided under the direction and guidance of the medial department.  COVID-19 test kits are available at SDCC for this use if medical personnel believe that a test to rule on COVID-19 is prudent.

11. I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that the foregoing is true and correct.

EXECUTED this __8__ day of April, 2020

_____
JERRY HOWELL
Warden of SDCC,
Nevada Department of Corrections