# EXHIBIT 2 – Declaration of Miguel Forero, Disease Control Specialist, Nevada Department of Corrections

AARON D. FORD
Nevada Attorney General
D. RANDALL GILMER (Bar No. 14001)
Chief Deputy Attorney General
MATTHEW P. FEELEY (Bar No. 13336)
State of Nevada
Office of the Attorney General
555 East Washington Avenue, Suite 3900
Las Vegas, NV 89101
(702) 486-3427 (phone)
(702) 486-3773 (fax)
drgilmer@ag.nv.gov
*Specially Appearing as Attorneys for*
*NDOC and the Warden of SDCC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARCELL WILLIAMS,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>WARDEN OF SOUTHERN DESERT<br>CORRECTIONAL CENTER, et al.,<br><br>　　　　　　Defendants. | CASE NO. 2:20-cv-00639-RFB-BNW<br><br>**DECLARATION OF MIGUEL<br>FORERO, DISEASE CONTROL<br>SPECIALIST, NEVADA<br>DEPARTMENT OF CORRECTIONS** |

　　　　I, Miguel Forero, hereby declare based on personal knowledge and/or information and belief, that the following assertions are true.

　　　　1.　　I am currently employed by the Nevada Department of Corrections (NDOC) as a Disease Control Specialist III. As part of my regular duties, I work with the NDOC Medical Director, Michael Minev, the Chief of Nursing Services, Medical Administrator Jennifer Bauer, and the rest of the NDOC medical administration and team.  As a Disease Control Specialist, I am routinely tasked with ensuring that all necessary documentation and recording of infectious diseases with the NDOC are properly maintained. I am also tasked with implementing medical testing consistent with the policies and procedures set forth by Dr. Minev.

2.      My job duties currently involve proper recording of all medical data related to COVID–19 tracking as well as in assisting Dr. Minev and the medical team in coordinating all necessary testing, patient care, and protocols regarding COVID–19 screening and quarantining.

3.      Based on my duties, I attest that as of the date of this declaration, NDOC has twenty–two (22) confirmed COVID–19 inmates. Each of these inmates arrived within the NDOC system after NDOC's COVID–19 procedures were put in place. Of these 22 inmates, only four of these inmates tested positive outside of an intake unit. Based on a total of a minimum of 12,260 inmates tested, this translates to an infection rate of .179%.

4.      Only one of these 22 confirmed COVID–19 cases was an inmate housed at Southern Desert Correctional Center (SDCC) at the time of the diagnosis.  As there were 1,584 inmates housed at SDCC as of July 28, 2020, this translates into an infection rate of .06%.

5.      That inmate was housed in Unit 8, which is a lockdown and segregation unit. He was housed in a cell by himself.  The NDOC learned of the inmate's positive test on July 11, 2020 as he was tested as part of the routine testing of all inmates being conducted by the NDOC. The inmate was asymptomatic both before and after the COVID–19 test.

6.      Prior to being housed in Unit 8, the inmate was housed in Unit 6, which is a general population unit where the inmates have more freedom to interact with one another.

7.      As a result of the SDCC inmate's positive test, he was immediately moved to the infirmary unit (Unit 9), where he was placed in medical isolation in a negative airflow cell. The NDOC also began contact tracing regarding any staff or inmates that may have had close contact with the inmate. This resulted in the decision to test all inmates in Unit 6 at the time in which the inmate was housed there. These tests occurred on July 13, 2020. The results of each test was negative for COVID–19.

8.      Regarding Unit 8, in consultation and advice provided to Dr. Minev from the State Medical Director, Dr. Azzam, and consistent with Center for Disease Control (CDC) recommendations, not every inmate in Unit 8 was tested following the inmate's positive

test. This decision was made based on the lack of close contact with inmates in Unit 8 as it is a lockdown unit with very little to no social interaction among the inmates outside of their individual cells. Instead, it was decided that the medically prudent decision was to test only inmates in Unit 8 who exhibit symptoms consistent with a COVID–19 infection. This resulted in three inmates (including inmates Young and Richardson) within Unit 8 being tested between July 20 and July 22, 2020. These three tests were also negative for COVID–19. However, to reiterate, each of these inmates are housed individually in a segregated unit, and therefore they do not have any close contact with the other inmates within the unit.

9.    The decision to not randomly test every inmate in Unit 8 was also made based on the fact that each inmate in the unit had been tested for COVID–19 on either June 15 or June 16, 2020 as part of the NDOC's decision to test all inmates and staff at all institutions.

10.    In addition to the 22 COVID-19 inmates within the NDOC system, as of the date of this Declaration, July 29, 2020, there have been a total of seventy-two (72) staff members that have tested positive throughout the NDOC system. Five (5) of these staff members were assigned to SDCC at the time of positive test, although some of those staff members had been assigned to offsite work guarding inmates at area hospitals.  This translates to an overall infection of inmates and staff system wide of approximately .629%, (94/14,926 staff and inmates) and of approximately .31% at SDCC (6/1,918 inmates and staff).

11.    As per the protocols designed and implemented by Dr. Minev, contact tracing is initiated whenever either an inmate or staff member tests positive for COVID–19. All staff members who have tested positive are placed on medical isolation and are not permitted to return to work until obtaining medical clearance from Dr. Minev. The medical clearance may differ depending on the particular circumstances of each patient, however, no COVID–19 positive staff member is permitted to return to work until he or she has received two negative COVID–19 tests separated in time by at least 48 hours, until

symptom free for at least seventy-two hours, and until being isolated for a minimum of fourteen (14) days.

12.    On May 27, 2020, NDOC announced that all inmates and staff would be tested for COVID–19. As of the date of this declaration, all inmates have staff have completed that testing.

13.    In addition to the first round of testing, on July 26, 2020, the NDOC made the decision to again test everyone inmate and staff member at Florence McClure Women's Correctional Center (FMWCC). This decision was made out of an abundance of caution due to a couple of recent positive COVID–19 tests at that institution.

14.    The NDOC has also decided to again perform mandatory testing of all inmates at each institution beginning in August 2020.  The plan is to complete at least one institution per month from August 2020 through February 2021. Following the completion of that round of testing in February 2021, the NDOC plans to take one month off from random, mandatory testing, before beginning the process again in April 2021, with an anticipated completion date of October 2021.

15.    While there is an initial schedule as to when these institutions will be tested, due to the need to have flexibility, I will not disclose that information at this time in this Declaration. However, should the Court believe it is important to know which institution is scheduled for which month, that information can be provided to the Court. If the Court seeks that information, the NDOC and my counsel have advised me that it would respectfully request that the information be provided to the Court in a confidential manner until such time as the information is made public.

16.    The NDOC has also decided that effective August 2020, all staff members will be tested once every two weeks as a matter of course. This testing will continue until such time as Dr. Minev concludes that the testing is no longer necessary on that schedule.

/././

/././

/././

17.   I declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that the foregoing is true and correct.

EXECUTED this 29th day of July, 2020

/s/ Miguel Forero*_____
Miguel Forero
Disease Control Specialist III,
Nevada Department of Corrections

* Pursuant to Temporary General Order 2020-05, entered by Chief Judge Du on March 30, 2020,   https://www.nvd.uscourts.gov/wp-content/uploads/2020/03/GO-2020-05-re-COVID-19-Remote-Hearings.pdf,   Mr. Forero has authorized counsel to affix his electronic signature to this Declaration. If counsel has misconstrued this Temporary Order, of if this Court would prefer a hand signature, one will be provided upon request.