UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARCELL WILLIAMS<br><br>　　　　　Plaintiff(s),<br><br>　v.<br><br>WARDEN OF SOUTHERN DESERT CORRECTIONAL CENTER, *et al*<br><br><br>　　　　　Defendant(s). | Case No. 2:20-cv-00639-RFB-BNW<br><br>**ORDER** |

**I.　INTRODUCTION**

Before the Court is Plaintiff Marcell Williams's Motion for Temporary Restraining Order and Motion for Order to Show Cause. ECF Nos. 46, 47. For the following reasons, the Court denies both motions.

**II.　PROCEDURAL BACKGROUND**

Plaintiff began this case when he filed a complaint and accompanying motion for a preliminary injunction and temporary restraining order on April 3, 2020. ECF No. 1. The complaint brought an Eighth Amendment deliberate indifference claim based on what Plaintiff alleged was the failure on the defendants' part to implement sanitizing and testing protocols to mitigate the spread of the novel coronavirus in the Southern Desert Correction Center ("SDCC"), where Plaintiff is currently incarcerated. Id. On April 16, 2020, the Court held a hearing on the emergency motions and denied the motions after Defendants submitted a notice of compliance with the Court. ECF Nos. 13, 14. The Court also ordered Defendants to file under seal notices

informing the Court of any positive tests for the novel coronavirus at any Nevada Department of Corrections facility. The Court screened Plaintiff's complaint on June 5, 2020. On July 24, 2020, Plaintiff filed a second motion for temporary restraining order and motion for order to show cause. Defendants filed a response on July 29, 2020. ECF No. 49. This written order now follows.

### III.    FACTUAL BACKGROUND

Plaintiff Marcell Williams is currently incarcerated at SDCC. He alleges as follows in his second motion for a temporary restraining order: Plaintiff is currently housed at SDCC in Unit 8, a lockdown unit. On July 11, 2020, an inmate who stays in the cell next to Williams was informed that he had tested positive for the novel coronavirus. Plaintiff overheard the conversation. Although he and the inmate who tested positive do not share the same sleeping quarters, they do live in the same unit, share the same phone, showers and other "germ-carrying amenities." Corrections officers did not start disinfecting the phone until Monday, July 13, 2020 and only do so when reminded. Plaintiff had been informed that every night since the other inmate tested positive, nurses are supposed to come and check if any inmates have symptoms. But as of July 19, 2020 no nurses had come to observe inmates' symptoms. Plaintiff saw prison staff deny temperature checks and fail to respond to "man downs" by inmates who appeared to be sick on the basis that they had no authority to do temperature checks. Plaintiff alleges that a correctional officer told him that Associate Warden James Scully told another correctional officer not to inform his coworkers that he had tested positive. Plaintiff further alleges that he has been in contact with several individual correctional officers who have tested positive for the novel coronavirus or been in contact with infected individuals. On July 15, 2020, Plaintiff filed a grievance in which he asked why no one else in his wing had been tested for the virus in light of his neighbor's positive coronavirus test. The grievance response stated that medical was "currently waiting for approval

to test the entire unit," and that "as soon as we get the ok everyone in the unit will be tested." Pl.'s Mot. TRO at 8. On July 17, 2020, Plaintiff submitted an emergency grievance in which he noted that no other inmates had been tested in light of the individual's positive coronavirus test, and that the unit had not yet been deep cleaned. In response, the prison responded that this was "not an emergency grievance," that Plaintiff had been "given cleaning supplies to keep [his] cell clean," that a doctor's order was necessary in order to receive a COVID-19 test, and that a doctor would be on duty until July 29, 2020. Plaintiff also attached declarations from other inmates, including the inmate who tested positive for the novel coronavirus, stating that no coronavirus testing had occurred since an inmate tested positive on July 11, 2020. Plaintiff now seeks a restraining order that would order Defendants to provide appropriate medical care at all times. Pl.'s Mot. TRO 2. Plaintiff specifically asks that Defendants "arrange for all exposed inmates to be tested as protocol [sic] any time [that they are] exposed to [a] hazardous person."

### IV. LEGAL STANDARD

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20

(2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

## V.     DISCUSSION

The Court denies Plaintiff's motions for a temporary restraining order and order to show cause because the Court does not find that Plaintiff has a likelihood of success on the merits.[1]

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993).  To challenge the conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). The objective prong requires a plaintiff to show a condition that is sufficiently serious to form the basis for an Eighth Amendment violation. Id.   When the issue is current exposure to a risk of *future* harm, the subjective prong requires the plaintiff to show that the prison official was aware of a serious *risk* of substantial harm. Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014).   A prisoner who is not currently suffering from serious medical needs may state a claim under the Eighth Amendment by alleging facts sufficient to show that defendants are, with deliberate indifference, exposing him to conditions that pose an unreasonable risk of serious damage to his future health. Helling, 509 U.S. at 35.  If the Court finds that the Eighth Amendment's subjective

---

[1] Defendants argue that Plaintiff has failed to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") requires that before bringing a Section 1983 action, a prisoner must exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). The Court declines to decide this issue now as the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits independent of the question of exhaustion.

and objective requirements are satisfied regarding a current and ongoing significant risk of serious harm to future health, it may grant appropriate injunctive relief. Farmer, 511 U.S. at 846. Prison officials who know of a substantial risk to an inmate's health and safety are liable only if they respond unreasonably to the risk, even if the harm ultimately is not averted. Farmer, 511 U.S. at 844; Peralta v. Dillard, 744 F.3d 1076, 1084-85 (9th Cir. 2014) (en banc).

In response to Plaintiff's allegations, Defendants explain that in consultation with the Medical Director of the Nevada Department of Corrections and consistent with Centers for Disease Control (CDC) guidelines, it was determined that the medically prudent decision was to test only inmates in the unit who exhibited symptoms consistent with a COVID-19 infection. ECF No. 49-2, Decl. of Miguel Forero, Disease Control Specialist, Department of Corrections, at ¶ 8. Defendants explain that Plaintiff's unit is a lockdown unit in which there is very little social interaction among the inmates outside of their individual cells. Id. Defendants also explain that after following these guidelines, three inmates with symptoms of COVID-19 were tested between July 20, 2020 and July 22, 2020, and all three tested negative. Id. Defendants have also completed testing of every inmate under custody of the Nevada Department of Corrections, and SDCC inmates would have been tested on either June 15, 2020 or June 16, 2020. Id. at ¶ 9. The Nevada Department of Corrections will do another round of mandatory testing of all inmates beginning in August 2020, with a goal of testing every inmate at each institution from August 2020 through February 2021. Id. at ¶ 14.

Defendants also refer to documents previously submitted to the Court in opposition to Plaintiff's last emergency motion, which note that all inmates have access to cleaning supplies and lists in detail SDCC's current sanitizing protocols. Given Defendants' explanation of their response to the positive inmate test at SDCC, the Court cannot conclude that Defendants have been

deliberately indifferent to the risk of COVID-19 infection at SDCC. While Plaintiff may disagree with Defendants' decision to not automatically test any inmate within the same unit where the positive inmate was located, the Court does not find that such disagreement warrants the granting of the injunctive relief that Plaintiff seeks.

The Court acknowledges that it cannot be certain that every correctional officer and NDOC employee within SDCC is strictly following the protocols that NDOC has developed as evidenced by its filings in this and related cases. But this lack of certainty does not authorize the Court to micromanage the NDOC's coronavirus response, which Plaintiff seems to want the Court to do.

### VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Marcell Williams's Motion for Temporary Restraining Order (ECF No. 46) and Plaintiff Marcell Williams's Motion for Order to Show Cause (ECF No. 47) are DENIED.

DATED August 3, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**